IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO.: 3:17-616 |
| | ) | |
| v. | ) | |
| | ) | **MOTION FOR DEPARTURES** |
| CORNELIUS LYLES | ) | **AND SENTENCING MEMORANDUM** |

The Government submits this motion for two departures – one upward and one downward – and provides a sentencing memorandum in support of the motions. In essence, the Government asks this Court to depart upward to reflect the nature of the Defendant's criminal conduct (in accord with the parties' stipulation) and then depart downward to reflect the Defendant's cooperation and assistance.

### A. The Defendant's Human Trafficking

#### 1. Overview

From at least 2009, the defendant was involved in human trafficking throughout South Carolina and surrounding states. During this period, Lyles supported himself from the prostitution activity of others and sexual exploitation of victims. Lyles went by the nickname "Premo Finesse." The term "Finesse" is used in the sex trafficking industry to describe a "Finesse pimp" or "Romeo pimp," meaning that manipulation is primarily used on the girls, as opposed to a "Gorilla pimp" who uses force and violence.[1] However, the fact that he was a finesse/Romeo pimp does not mitigate the trafficking nature of his crime, as seen in his conversations with an identified fellow trafficker:

---

[1] There is evidence that Lyles did at some point use violence, however, it appears to be limited in both scope and frequency.

1

"snatch her lil ass up then b4 the bitch get ruined," "I'm try to game her on some lover type shit." "but she young I just looked her up she look like a money maker." "Yea I'd run dat horse she a bread winner."

"Yeah I'm playing on her right now using reverse psychology Ima get da bitch to bite and when I do u go scoop her ass up." "That's my lil bitch I was telling u about when I was in York county," "I started her in this shit P."

### 2. Lyles Dealt in Human Trafficking, Not in Pimp-Prostitute Relationships

Lyles' business was human trafficking; it was not a business where the girls were in a contractual relationship with him. Lyles demonstrated ownership and control of victims, this ranged from branding his property/females with tattoos of "Premo" to not paying the victims for prostitution services rendered. Additionally, Lyles provided the advertising – generally on Backpage.com. Lyles kept the women in service by harboring (paying for housing to include a rental house and motels/hotels where commercial sex acts occur), transporting, providing for, and occasionally providing gifts and displays of affection. An example of this can be seen in his recruitment of one of the identified woman in 2016 using Facebook:

> Lyles: "I got a nice house and car here so we good babe. I promise I will take good care of u and keep u happy."

Lyles sent a photograph of a residence provided to house victims located at 15 Leighton Court,[2] Simpsonville, SC.

### 3. Recruitment

The investigation identified approximately 20 victims who worked for Lyles. Lyles recruited victims by promising things such as protection, a place to live, and the ability to make an

---

[2] The FBI conducted a search at this residence at the time of Lyles' arrest and found multiple items of evidence indicative of trafficking activity to include identification documents for multiple females and two handguns.

abundant amount of money. Lyles primarily used Facebook to recruit victims.[3] In 2016, Lyles communicated via Facebook a recruitment pitch to an identified victim:

> "u can make a stack a day easy," $80 for 15 mins," "and I will take care of u," "I pay for the room," "I keep u up. Hair and nails done," "new phone," "and down here in SC nobody in NC will know what u doin."

The individuals recruited by Lyles ranged from people that were at the time engaging in prostitution[4] to individuals who had never been in the prostitution business:

> "I can show u how to get money," "escort," "backpage," "online dating," "they pay for your time," "I can show u," "in a hotel," "incalls…the clients come to your room," "outcalls you got to them when we have a car," "I will pay for everything to get u started but u gotta be all the way down with me and I will help u." "its not a serious crime, its only a 30 day charge if anything happens," "but nothing will happen if u with me cause I will be your eyes and protection."

### 4. Lyles was Attempting to Expand his Trafficking Operation

Lyles contacted an FBI source in the attempt to rent a facility to use as a brothel. Lyles described in detail his plan to advertise under the ruse of "massage parlor," but in reality the location would be used for the purpose of operating a prostitution business. Lyles stated that wanted to recruit "exotic" women to work at his prostitution business. Lyles had numerous conversations with the source and traveled to Columbia in order to identify suitable properties.

---

[3] The FBI executed a search warrant on the Facebook account of Lyles to include content from Facebook Messenger and conversations between Lyles and multiple individuals. Information from Facebook identified at least 15 females that were actively recruited by Lyles.

[4] A Pen Register and Trap and Trace on Lyles' telephone revealed that Lyles contacted over 38 numbers associated with females advertising on backpage.com.

B. **A Departure to 180 Months is Appropriate Considering the Actions of Lyles**

1. **A Departure is Warranted Under Section 5K2.21 - Dismissed or Uncharged Conduct**[5]

The court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as a part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reasons, and (2) that did not enter into the determination of the applicable guideline range.

The Government and the defendant stipulated that a sentence of 180 months is the appropriate disposition of the case. *See* Dkt. 24.[6] The defendant and the Government entered into the agreement after the defendant and counsel were provided the opportunity to review a portion of the discovery showing provable charge(s) under Title 18, United States Code, Section 1591. The stipulated sentence took into account the calculations of the uncharged conduct, along with the fact that the defendant quickly accepted responsibility and began to actively cooperate. The guideline range as determined by the Pre-Sentence Report for the charge of conviction does not reflect the actual seriousness the actions of the defendant from conduct not charged due to the plea agreement, therefore a upward departure is warranted.

   a.    **Section 1591(b)(1) is Uncharged Conduct**

The mandatory minimum for Section 1591(b)(1) is a sentence of 180 months, with a guideline base offense level 34, 2G1.1. It appears that no other specific offense characteristics would apply. However, a role enhancement 3B1.1 would have been applicable, as the business was structured with "bottom bitches" serving roles to run and control the business and in fact, the

---

[5] The offense plead to would not have the same enhancements, as would the uncharged conduct.

[6] This stipulation was entered into after a previous 180 months 11(c)1(C) plea agreement was entered into by the parties.

4

abusive conduct was directed at his original bottom bitch. Therefore, a calculation of 33-35 after acceptance of responsibility, putting the defendant's ranges between 168-293 months if the defendant had plead to the uncharged conduct.

### b.     Sections 1594 and 1591(b)(2) are Uncharged Conduct

Had the defendant been charged pursuant to 1594, conspiracy to violate 1591(b)(2) and the substantive offense of 1591(b)(2),[7] then the mandatory minimum is a sentence of 120 months and a guideline application of 2G1.3, base offense level of 30, with a criminal history of III. Specific offense characteristic 2G1.3(b)(3), use of a computer to induce, entice, encourage a minor to travel to engage in prohibitive sex. Similar to 1591(b)(1), a role enhancement under 3B1.1 of some amount would have been applicable. An example of why role would have been applicable, is seen in Wiley's recruitment of numerous girls to include at least one minor at the defendant's direction to further the defendant's sex trafficking business.

Additionally, had the defendant plead to this offense conduct, then an additional vulnerable victim enhancement would have been applicable as the defendant knew or should have known that the recruited minor victim was a vulnerable victim. The minor was from broken homes who was trying to run away. *See United States v. Willoughby*, 742 F.3d 229, 241 (6th Cir. 2014) (affirming application of § 3A1.1(b)(1) in sex trafficking case),[8] *cf. United States v. Frohlich*, 737 F.3d. 527 (8th Cir. 2013) (affirming application of § 3A1.1(b)(1) based on evidence of victim's intellectual

---

[7] Elise Wiley provided information that the defendant knew that one of the minors that she recruited was 17 years of age and stated that Lyles actively encouraged Wiley to recruit girls using the internet. Additionally, one of the Facebook conversations revealed a women stating: "And a 15 yr old was telling me u was trying to get her back on the team," to Lyles. Lyles and the women who worked with Lyles called the trafficking business "Team Prem."

[8] Recently the District Court in *United States v. Pratt*, 3:16-207, applied the vulnerable victim enhancement for a runaway and a separate person who had low intellectual ability.

limitations). The Government would have put on testimony of Wiley and the child, therefore the Vulnerable Victim Adjustment would have been applicable.

The defendant would have a guidelines calculation of 33-35 after acceptance of responsibility, putting the defendant's sentencing ranges between 168-293 months.

### c. Section 2422(b) is Uncharged Conduct

Likewise, had the defendant been charged with 2422(b), then a mandatory sentence of 120 months, with a guideline 2G1.3, base offense level of 28. The same enhancements as detailed above for 1591(b)(2) would be applicable, with a total calculation of 31-33, putting the defendant's sentencing ranges between 135-210 months.

### 2. A Departure is Warranted under Section 5K2.0(a)(1)(B)

In the case of child crimes and sexual offenses, the court finds pursuant to 18 U.S.C. §§ 3553(b)(2)(A)(i), that there exists an aggravating circumstance, of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described.

The Guidelines as calculated do not take into account the aggravating circumstances of the crime and an upward departure is appropriate. For the reasons stated above, the defendant's actions and the aggravating circumstances surrounding them exceed the guideline range of the offense of conviction and require an upward departure.

### 3. Conclusion

The Government moves for an upward departure that takes into account the charges not plead to and the aggravating nature of the crime.

### A. A Downward Departure is Warranted under Section 5K1.1 – Substantial Assistance

The defendant has fulfilled his obligations of cooperation as found in his plea agreement.

To date Lyles has cooperated in three cases: *United States v. Elise Wiley*, 3:17-752, *United States v. Alandis Patterson*, 6:16-299, *and North Carolina v. Ja-Rick Boxley*. The defendant substantially assisted in all three cases.

1. **Wiley**

Wiley was in the car when Lyles was arrested. Wiley provided false information to law enforcement stating her name was Victoria Harris. Lyles provided information so that law enforcement could identify Wiley. Additionally, Lyles provided information that Wiley was operated as his bottom with various other girls that he trafficked. Law enforcement used this information to locate Wiley who found to be actively trafficking a minor – the minor was rescued and Wiley was charged. The overwhelming benefit of the defendant's cooperation is its timeliness and as related to Wiley and the child that she was trafficking.

2. **Patterson**

Lyles has met with prosecutors to discuss his observations of the prostitution efforts of and violence executed by Alandis Patterson. Lyles is scheduled to testify December 4, 2017, at Patterson's sentencing hearing. Patterson is a violent human trafficker who is challenging various enhancements. The Government believes that Lyles can provide the Court information that will contradict Patterson's objections.

3. **Boxley**

Boxley was a competitor in the human trafficking business. When Lyles poached one of Boxley's girls, Boxley confronted Lyles and shot him in the face. Boxley was charged with the attempted murder. Boxley requested a trial, under the belief that Lyles would not testify against him. Lyles was transported to Charlotte Mecklenburg for the trial. At learning that Lyles was

present and prepared to testify, Boxley entered a plea of guilty. Lyles provided this information against a person who attempted to murder him, as such Boxley presents are clear threat to the safety of Lyles.

### 4. Conclusion

The Government requests that the Court grant the downward departure request for Lyles due to his substantial assistance in three separate cases.

        BETH DRAKE
        UNITED STATES ATTORNEY

    By:   s/James H. May
           James H. May (#11355)
           Assistant United States Attorney
           1441 Main Street, Suite 500
           Columbia, SC 29201
           Email address: jim.h.may@usdoj.gov